UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANGELA S.,[1]  )
            )
    Plaintiff,  )
            )
    v.       )   No. 1:19-cv-04262-MJD-JPH
            )
ANDREW M. SAUL,  )
            )
            )
    Defendant.  )

**ENTRY ON JUDICIAL REVIEW**

Claimant Angela S. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act").  *See* 42 U.S.C. §§ 416(i), 423(d).  For the reasons set forth below, the Court **REVERSES** and **REMANDS** the decision of the Commissioner.

**I.  Background**

Claimant filed an application for DIB on May 5, 2016, [Dkt. 10-3 at 2], and an application for SSI on May 6, 2016, *id.* at 12, alleging disability beginning April 5, 2015.[2]  *Id.*

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] The parties set forth Claimant's medical background in their briefs.  [*See* Dkt. 12 at 5 & Dkt. 14 at 2.]  Because these facts involve Claimant's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate only specific facts as needed below.

Claimant's applications were initially denied on July 28, 2016, *id.* at 2 & 12, and again upon reconsideration on October 18, 2016, *id.* at 22 & 34. Administrative Law Judge Monica LaPolt ("ALJ") held a hearing on Claimant's application on June 11, 2018. [Dkt. 10-2 at 32.] On September 26, 2018, the ALJ issued her determination that Claimant was not disabled. *Id.* at 26. The Appeals Council denied Claimant's request for review on August 20, 2019, *id.* at 2, which made the ALJ's decision the final decision of the Commissioner. Claimant then timely filed her complaint in this Court seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II.  Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[3] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. p. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at

---

[3] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Order contains citations to those that apply to DIB.

step three and cannot perform her past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity (RFC) by evaluating "all limitations that arise from medically determinable impairments, even those that were not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009).

      The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2007). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000)); *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* While the ALJ must base her decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and must "provide some glimpse into [her] reasoning" to "build an accurate and logical bridge from the evidence to [her] conclusion," she need not "address every piece of evidence or testimony." *Dixon,* 270 F.3d at 1176.

### III. The ALJ's Decision

      The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of April 5, 2015. [Dkt. 10-2 at 20.] At step two, the ALJ determined

3

that Claimant had the following severe impairments: fibromyalgia and degenerative disc disease. *Id.* At step three, however, the ALJ found that Claimant "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* at 21. In making this determination, the ALJ considered Listings 1.04 (Disorders of the Spine) and 14.09 (Inflammatory Arthritis). *Id.*

The ALJ next analyzed Claimant's RFC and concluded that she had the RFC to perform sedentary work,

> except that claimant can occasionally climb ramps and stairs but never ladders rope or scaffolds. The claimant can frequently balance and occasionally stoop, kneel, crouch, and crawl. The claimant can occasionally use foot controls bilaterally. The claimant must never work around slippery or uneven surfaces.

*Id.* In determining the RFC, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 23.

At step four, the ALJ found that Claimant was unable to perform her past work as a nurse assistant. *Id.* at 24. The ALJ proceeded to step five, considering testimony from a vocational expert ("VE") who indicated that an individual with Claimant's age, education, work experience, and RFC would be able to perform several jobs that exist in significant numbers in the national economy, such as an order clerk, final assembler, and charge account clerk. *Id.* at 24-25. Based on these findings, the ALJ concluded that Claimant was not disabled. *Id.* at 26.

## IV.  Discussion

The central issue is whether substantial evidence supports the ALJ's determination that Claimant is not disabled.  Claimant asserts three arguments for reversing the ALJ's decision: (1) the ALJ failed to evaluate fibromyalgia under Social Security Rule (SSR) 12-2p, (2) the ALJ failed to properly analyze Claimant's daily activities, and (3) the ALJ failed to thoroughly evaluate Claimant's mental health impairments.  These arguments are addressed, in turn, below.

A. <u>Social Security Rule 12-2p</u>

Claimant contends that the ALJ erred by failing to properly evaluate her fibromyalgia under SSR 12-2p.  Specifically, Claimant argues that the ALJ improperly evaluated the limitations of her fibromyalgia by focusing on symptoms unrelated to fibromyalgia.

SSR 12-2p provides guidance on how ALJs will evaluate fibromyalgia in disability claims.  If a claimant's impairment does not meet or equal a Listing under Appendix 1, subpart P of 20 CFR part 404, the ALJ will determine a claimant's RFC based on all relevant evidence in the record.  SSR 12-2p.  Fibromyalgia cannot "meet" a Listing because fibromyalgia is not a listed impairment.  *Id.*  Therefore, if a claimant has fibromyalgia, the ALJ will evaluate the intensity and persistence of the claimant's pain and other symptoms and determine the extent to which the symptoms limit her capacity for work.  *Id.*  Additionally, "[c]ourts have recognized that often there is no objective medical evidence indicating the presence or severity of fibromyalgia." *Apke v. Saul*, WL 4018988, at *4 (7th Cir. July 16, 2020).  SSR 12-2p identifies several symptoms related to fibromyalgia, including: muscle pain, bladder spasms, fatigue or tiredness, muscle weakness, numbness or tingling, dizziness and headaches.  SSR 12-2p, n. 9.  "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, [the ALJ will] consider all

5

of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p. For claimants with fibromyalgia, the ALJ will "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.*

Claimant testified that she has issues with urinary incontinence due to bladder spasms "four to five times a day, at least," [Dkt. 10-2 at 46], and that she typically showers twice a day because of her incontinence. *Id.* at 49. Additionally, Claimant testified on June 11, 2018, that she is "up and down all night" and that she typically wets the bed a "[c]ouple times a week." *Id.* at 50. Claimant further testified about the side effects from medications she is prescribed to manage her fibromyalgia symptoms, stating that Gabapentin causes her drowsiness "approximately five times a day" and that Flexeril also causes her "[d]izziness and sleepiness." *Id.* at 47. Claimant testified that she can "sit probably 20 to 40 minutes if [she] push[es]," but stated that the pain from sitting is so bad that she has to lie down on a daily basis to relieve the pain. *Id.* at 55-56. On February 29, 2016, Claimant reported to her Primary Care Provider, Dr. Kelly Riggs, that she "is having her legs (sometimes one or the other) give out on her," and described this by stating that "when she is standing or walking and one of her legs starts trembling and then gets progressively more weak so that if she doesn't sit down, her legs will give out." [Dkt. 10-7 at 27.] While the ALJ did mention that Claimant spends half of her day in bed, [Dkt. 10-2 at 22], the ALJ never explained how such evidence was considered when making her RFC determination. *See Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[S]ummarizing the evidence is not the equivalent of providing an analysis of the

evidence."). Further, while the ALJ noted that Claimant had been using a walker daily for the past two years, [Dkt. 10-2 at 22], the ALJ's explanation for discrediting her need for a walker is flawed because it focuses on medical reports completed months apart and ignores evidence of Claimant's "bad days," such as a report from Neurologist, Dr. Marc L. Cohen, on April 13, 2017, stating that "[Claimant] is unable to walk without her walker at this time due to the weakness in her back." [Dkt. 10-15 at 6.] Thus, the ALJ failed to properly evaluate the evidence relating to Claimant's claim of disabling symptoms related to fibromyalgia in her RFC determination. This failure should be remedied on remand.

      B. Claimant's Daily Activities

Claimant contends that the ALJ erred in concluding that Claimant's reports of daily activity contradicted her report of subjective symptoms. Specifically, Claimant argues that the ALJ uses a flawed evaluation of Claimant's daily activities to support her conclusion that Claimant is capable of full-time work.

While it is permissible for the ALJ to consider a claimant's daily activities when evaluating his or her subjective symptoms, the Seventh Circuit has repeatedly admonished the ALJ not to place "undue weight" on those activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (explaining that the pressure, nature of the work, flexibility in the use of time, and all the various aspects of a working environment, often differ dramatically between the home and the place of employment); *Gentle v. Barnhart*, 430 F.3d 865, 867-88 (7th Cir. 2005) (noting that the ALJ's reliance on claimant's minimal daily activities warrant further discussion on this issue); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (finding that the ALJ's failure to consider the difference between a claimant's ability to engage in sporadic physical activities and her being able to work eight hours

a day for five consecutive days of the week required remand). Due to the waxing and waning nature of symptoms of fibromyalgia, a person is likely to have "better days and worse days." *See* SSR 12-2p; *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."). Additionally, "[t]he ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

The ALJ mischaracterizes the evidence of record regarding Claimant's ability to engage in daily activities when she states that "claimant's reports of very limited exertional capacities are inconsistent with objective evidence noted above, and prior reports of daily activity, which include climbing ladders and washing cabinets and regularly working out at the gym." [Dkt. 10-2 at 23.] Two of the daily activities cited by the ALJ were precipitating events that led to multiple doctor's visits by Claimant, and, as the Seventh Circuit has previously noted, relying on these types of ill-advised activities cannot support a conclusion that Claimant is capable of performing full-time work. *See Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) (remanding where the ALJ cited activities that led to claimant's doctor visits when determining that claimant was capable of performing full-time work). After falling from a six-foot ladder, Claimant went to the emergency room at the Community Hospital of Anderson on April 11, 2017. [Dkt. 10-19 at 31.] Claimant reported that when she was near the top of the ladder, she had a severe back spasm that caused her to lose her footing and land on her side. *Id.* In a follow-up neuropathy appointment with Dr. Marc Cohen on April 13, 2017, Claimant stated that her fall happened while she was cleaning her cabinets. [Dkt. 10-15 at 6.] Additionally, Claimant's sister

8

reported that Claimant "has more bad days than good" and that "on a good day [Claimant] will do light house work. On a bad day she will stay in bed and cry in pain." [Dkt. 10-6 at 77.] The ALJ's analysis that Claimant can climb ladders and clean her cabinets is a mischaracterization of Claimant's abilities and does nothing to support her conclusion that Claimant is capable of full-time work.

The ALJ also points to Claimant's gym habits as being contradictory to her allegations of pain. [Dkt. 10-2 at 23.] However, the ALJ fails to mention that Claimant's treating Nurse Practitioner, Ms. Lindsay E. Johnson, recommended exercising and strength training in all three of her treatment options to help treat Claimant's abnormal weight gain from being on Prozac. [Dkt. 10-15 at 35.] Courts in this jurisdiction have held that it is unreasonable for an ALJ to rely on a physician's recommendation to exercise as an indication that Claimant could work a full-time job. *See Scrogham*, 765 F.3d at 701. Claimant further testified that while she is at the gym, she is spending time doing stretches that she was taught during physical therapy. [Dkt. 10-2 at 42-43.] Claimant testified that she tried walking on the treadmill "for two minutes," but she "couldn't keep up because it went faster than [her] normal walking pace." [Dkt. 10-2 at 43.] As the Seventh Circuit has previously noted, a patient may engage in physical activities "*despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Carradine v. Barnhart,* 360 F.3d 751, 756 (7th Cir. 2004).

The ALJ placed undue weight on Claimant's daily activities and cherry-picked evidence of Claimant's daily activities on her "good days" to support her conclusion that Claimant is capable of full-time work. This mischaracterization of Claimant's daily activities must be remedied on remand.

9

C. Mental Health Impairments

Claimant contends that the ALJ failed to consider her mental impairments when assessing her RFC determination. Specifically, Claimant contends that, although she did not allege any mental impairments, the ALJ was required to consider the exacerbating effects of her mental impairments on symptoms from her other medically determinable impairments.

The ALJ must consider all of the evidence in the record and must explain her decision such that it may be meaningfully reviewed. 20 C.F.R. § 404.1545; *Eichstadt v. Astrue,* 534 F.3d 663, 665–66 (7th Cir. 2008). When determining a claimant's RFC, the ALJ must consider the combined effect of all impairments, "even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing 20 C.F.R. § 404.1523). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

The evidence of record indicates that Claimant has been diagnosed with mixed anxiety and depressive disorder and prescribed medication for those conditions. [Dkt. 10-14 at 6, 8.] On remand, the ALJ should determine whether these conditions constitute severe impairments and consider the effects, if any, of these conditions, as well as any side effects from the prescribed medication, on Claimant's RFC.

V. **Conclusion**

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings.

SO ORDERED.

Dated: 31 JUL 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

11